# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **WE THE PATRIOTS USA, INC., et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 4:23-cv-00382** |
| | : | |
| **v.** | : | **Judge David A. Ruiz** |
| | : | |
| **UNITED STATES ENVIRONMENTAL** | : | |
| **PROTECTION AGENCY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

## DEFENDANTS GOVERNOR MIKE DEWINE AND
## DIRECTOR ANNE VOGEL'S MOTION TO DISMISS

---

Now come Defendants Mike DeWine and Anne Vogel (collectively, "the State Defendants"), by and through counsel, who hereby move this Court to dismiss the Complaint (ECF No. 1) for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Additionally, Plaintiff We the Patriots lacks standing under Fed. R. Civ. P. 12(b)(1). A memorandum in support is attached.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Michael A. Walton*
MICHAEL A. WALTON (0092201)*
*Counsel of Record*
ALLISON D. DANIEL (0096186)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Michael.Walton@OhioAGO.gov
Allison.Daniel@OhioAGO.gov

*Counsel for Defendants Governor Mike
DeWine and Director Anne Vogel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

STATEMENT OF THE ISSUES..................................................................................... vi

SUMMARY OF THE ARGUMENTS ........................................................................... vi

MEMORANDUM IN SUPPORT..................................................................................... 1

    I.        INTRODUCTION ............................................................................ 1

    II.      BACKGROUND ............................................................................. 1

               A.     The State Defendants promptly respond to the tragic Norfolk Southern train derailment. ................................................. 1

               B.     The State Defendants employed various testing and monitoring systems to ensure the safety of those affected by the Norfolk Southern derailment.................................. 2

               C.     Plaintiffs file their lawsuit against the Defendants. ....................... 4

    III.     LAW AND ARGUMENT ................................................................ 5

               A.     Standard of Review........................................................................ 5

               B.     We the Patriots lacks standing to bring its claim. ........................... 6

               C.     Plaintiffs' improper group pleading fails to satisfy Rule 8. .......................................................................................... 9

               D.     Plaintiffs fail to state a valid substantive due process claim under the state-created danger doctrine. ............................ 10

               E.     Plaintiffs fail to sufficiently state a valid mandamus claim........................................................................................... 18

    IV.     CONCLUSION............................................................................. 20

CERTIFICATE OF SERVICE ...................................................................................... 21

CERTIFICATE OF COMPLIANCE ............................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Alshaibani v. Litton Loan Servicing, LP*,
    528 Fed.Appx. 462 (6th Cir. 2013)......................................................................................1, 6

*Am. BioCare Inc. v. Howard & Howard Attys. PLLC*,
    702 F.App'x 416 (6th Cir. 2017) ..........................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................5

*Baaghil v. Miller*,
    1 F.4th 427 (6th Cir. 2021) ...........................................................................................18, 19

*Bailey v. City of Broadview Heights*,
    721 F. Supp. 2d 653 (N.D.Ohio 2010)................................................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................9

*Bondex Intl., Inc. v. Hartford Accident and Indemnity Co.*,
    667 F.3d 669 (6th Cir. 2011) ..............................................................................................10

*Buchanan-Moore v. Cty. of Milwaukee*,
    570 F.3d 824 (7th Cir. 2009) ..............................................................................................11

*Bukowski v. City of Akron*,
    326 F.3d 702 (6th Cir. 2003) ...................................................................................12, 13, 16

*Cartwright v. City of Marine City*,
    336 F.3d 487 (6th Cir. 2003) ..............................................................................................12

*Cartwright v. Garner*,
    751 F.3d 752 (6th Cir. 2014) ....................................................................................5, 12, 13

*Davis v. Detroit Pub. Schs. Cmty. Dist.*,
    899 F.3d 437 (6th Cir. 2018) ................................................................................................8

*Deshaney v. Winnebago Cty. Dept. of Social Servs.*,
    489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)......................................................11

*Devine v. Sevel*,
    No. 1:16 CV 2994, 2018 U.S. Dist. LEXIS 82753 (N.D.Ohio May 16, 2018) ....................14

*Doe v. Jackson Local School Dist. Bd. of Edn.*,
    954 F.3d 925 (6th Cir. 2020) ...................................................................................15, 16, 17

| Cases | Page(s) |
|---|---|

287 F.3d 492 (6th Cir. 2002) ......................................................................15, 17

*Fieger v. Mich. Supreme Court*,
   553 F.3d 955 (6th Cir. 2009) .............................................................6

*Fritz v. Charter Twp. of Comstock*,
   592 F.3d 718 (6th Cir. 2010) .............................................................6

*Grendell v. Ohio Supreme Court*,
   252 F.3d 828 (6th Cir. 2001) .............................................................6

*Health v. United States FDA*,
   No. 21-6203, 2022 U.S. App. LEXIS 19234 (6th Cir. July 12, 2022) ................................6, 7

*Intermodal Techs., Inc. v. Mineta*,
   413 F. Supp. 2d 834 (E.D.Mich. 2006)..................................................19

*Janan v. Trammell*,
   785 F.2d 557 (6th Cir. 1986) ............................................................14

*Kallstrom v. City of Columbus*,
   136 F.3d 1055 (6th Cir.1998) ...........................................................14

*Marcilis v. Twp. of Redford*,
   693 F.3d 589 (6th Cir. 2012) .............................................................9

*McQueen v. Beecher Cmty. Sch.*,
   433 F.3d 460 (6th Cir. 2006) ................................................... *passim*

*Memphis A. Philip Randolph Inst. v. Hargett*,
   2 F.4th 548 (6th Cir. 2021) ..............................................................9

*Mitchum v. Foster*,
   407 U.S. 225 (1972)....................................................................19

*O'Georgia v. U.S. Dep't of Justice*,
   370 F. Supp. 2d 657 (N.D. Ohio 2005)..................................................18

*Online Merchants Guild v. Cameron*,
   995 F.3d 540 (6th Cir. 2021) ...........................................................7, 8

*Paige v. New York City Hous. Auth.*,
   No. 17cv7481, 2018 U.S. Dist. LEXIS 137238 (S.D.N.Y. Aug. 14, 2018) ............................12

**Cases**                                                                 **Page(s)**

*Rosen v. Tenn. Comm'r of Fin. & Admin.*,
    288 F.3d 918 (6th Cir. 2002) .................................................................8, 9

*Sargi v. Kent City Bd. of Edn.*,
    70 F.3d 907 (6th Cir. 1995) ...................................................................14

*Schroder v. City of Fort Thomas*,
    412 F.3d 724 (6th Cir.2005) .............................................................14, 16

*Shehee v. Luttrell*,
    199 F.3d 295 (6th Cir. 1999) .................................................................18

*Shelby Advocates for Valid Elections v. Hargett*,
    947 F.3d 977 (6th Cir. 2020) ...............................................................7, 8

*Smith v. United States Bureau of Prisons*,
    No. 7:17-cv-124-KKC, 2017 U.S. Dist. LEXIS 118421 (E.D.Ky. July 28,
    2017) ....................................................................................................18

*Strayhorn v. Wyeth Pharm., Inc.*,
    737 F.3d 378 (6th Cir. 2013) ...................................................................5

*Vidovic v. Mentor City Sch. Dist.*,
    921 F. Supp.2d 775 (N.D. Ohio 2013)....................................................11

*Walker v. City of E. Chicago*,
    No. 2:16 CV 367, 2017 U.S. Dist. LEXIS 160729 (N.D.Ind. Sep. 29, 2017) ........................13

*Waskul v. Washtenaw Cty. Cmty. Mental Health*,
    900 F.3d 250 (6th Cir. 2018) ...................................................................9

**Statutes**                                                              **Page(s)**

28 U.S.C. § 1651(A) ..................................................................................18

42 U.S.C. § 1983......................................................................14, 17, 19, 20

iv

**Other Authorities**                                                                        **Page(s)**

Fed. R. Civ. P. 8 .................................................................................................1, 9

Fed. R. Civ. P. 12(b)(1) ...........................................................................................5

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 5, 18

United States Constitution Fourteenth Amendment ........................................4, 5, 10, 17

United States Constitution Article III ..................................................................6, 8

## STATEMENT OF THE ISSUES

1. Whether Plaintiff We the Patriots, a nonprofit charity organization, has standing to bring its constitutional claim?

2. Whether Plaintiffs have properly given notice of their claim against Defendants DeWine and Vogel under Fed. R. Civ. P. 8?

3. Whether the Plaintiffs have stated a substantive due process claim upon which relief can be granted?

4. Whether the Plaintiffs are entitled to mandamus relief?

## SUMMARY OF THE ARGUMENTS

Plaintiffs—a nonprofit charity organization called We the Patriots and an individual resident of East Palestine, Ohio, named Courtney Fish—are claiming that their substantive due process rights were violated when Ohio Governor Mike DeWine and the United States and Ohio Environmental Protection Agencies responded to the Norfolk Southern train derailment in East Palestine, Ohio.  Specifically, they claim that the State Defendants failed to appropriately test the air and water and as a result told East Palestine residents it was safe to return home when they knew or should have known that it was not safe.

This case must be dismissed for several reasons. *First*, We the Patriots lacks standing to sue. As an organization it could have standing to sue on behalf of itself if it demonstrates that it expended resources due to the government's illegal conduct. But We the Patriots make no such allegations. We the Patriots also lacks associational standing because it fails to name even one member of its organization that was injured by the State Defendants' response to the Norfolk Southern derailment. *Second*, the Plaintiffs fail to provide adequate notice of their claims against each defendant under Fed.R.Civ.P. 8. They grouped the defendants together and did not name the defendants specifically when describing the allegedly illegal conduct, making it impossible to parse out who did what to whom. *Third*, the Plaintiffs failed to state a substantive due process

claim against Defendants DeWine and Vogel. Plaintiffs cannot establish any of the three elements of their state-created danger claim. *Fourth*, Plaintiffs failed to state valid claim for mandamus relief because they cannot establish any of the requirements for mandamus either.

**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

Plaintiffs consist of We the Patriots, an organization whose membership allegedly includes Ohio and Pennsylvania residents affected by the Norfolk Southern derailment, and Courtney Fish, a resident of East Palestine, Ohio, who was also affected by the Norfolk Southern derailment. Plaintiffs allege that the State Defendants, along with the United States Environmental Protection Agency and its Director, are liable under a state-created danger theory related to their response to the Norfolk Southern derailment. In short, they claim that the State Defendants employed inadequate air and water testing and told residents it was safe to return home when it was not. But Plaintiffs' Complaint contains four fatal flaws that require dismissal. First, We the Patriots lacks standing to bring their claim. Second, the Plaintiffs fail to provide adequate notice of their claims against Governor DeWine and Director Vogel under Fed. R. Civ. P. 8. Third, the Plaintiffs fail to state a viable state-created danger claim. And, fourth, to the extent Plaintiffs seek mandamus relief, they fail to state such a claim. As a result, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate.

## II.    BACKGROUND

### A.  The State Defendants promptly respond to the tragic Norfolk Southern train derailment.

On February 1, 2023, a train owned and operated by Norfolk Southern was travelling from Illinois to Pennsylvania when it derailed in East Palestine, Ohio. Compl., ECF No. 1, PageID # 3, ¶ 9, 11. Among other cargo, Plaintiffs allege that the train was carrying toxic materials, including chloroethene, butyl acrylate, 2-ethyhexyl acrylate, ethylene glycol monobutyl ether, isobutylene, and benzene residue.[1] *Id.* at ¶ 11.

---

[1] As with every allegation in the Complaint, the State Defendants must presume that the alleged facts are true *only* for the purposes of their motion to dismiss. *Alshaibani v. Litton Loan Servicing,*

According to the Complaint, once the train derailed, a fire ensued, and toxic chemicals began to spill into nearby water sources. *Id.* at ¶ 11-12. Plaintiffs allege that the fire continued to burn for three days. *Id.* at ¶ 13. Plaintiffs allege that the fire polluted the air with toxic chemicals. *Id.* Plaintiffs further claim that one of the cars containing vinyl chloride malfunctioned and was unable to safely release the chemicals inside. *Id.* at PageID # 4, ¶ 17. Plaintiffs allege that this car posed a significant danger because the pressure build up was so severe that it could have caused an explosion, resulting in shrapnel being cast out over multiple miles. *Id.*

In response to the initial derailment and the impending danger that the car containing vinyl chloride posed, Plaintiffs allege that officials issued a shelter-in-place order for the residents of East Palestine and an evacuation order for those residents living within one mile of the train derailment. *Id.* at ¶ 16. Plaintiffs further claim that the officials decided that it was necessary to conduct a controlled release of the unstable cars containing toxic chemicals. *Id.* at ¶ 18. They allege that the derailment and controlled release resulted in the exposure to toxic chemicals into the atmosphere, soil, and nearby water sources. *See* Compl., ECF No. 1, PageID # 5-7. Plaintiffs claim that the gas from the controlled release was dispersed over a 30-mile range, affecting both Ohio and Pennsylvania residents, who complained of noxious fumes as well as numb tongues and lips. *Id.* at ¶ 22.

### B.  The State Defendants employed various testing and monitoring systems to ensure the safety of those affected by the Norfolk Southern derailment.

On February 4, 2023, Plaintiffs allege that the Ohio and US EPAs began conducting air monitoring for volatile organic compounds, such as vinyl chloride and butyl acrylate of the affected area. *Id.* at PageID # 7, ¶ 38. Additionally, both EPAs allegedly hired outside contractors

---

*LP*, 528 Fed.Appx. 462, 463-64 (6th Cir. 2013).  This is certainly not an admission that the alleged facts are, indeed, true.

to install booms and underflow dams to restrict the flow of any contaminated water. *Id.* at ¶ 39. Plaintiffs further claim that Ohio Governor Mike DeWine activated the Ohio National Guard to assist local authorities, on February 5. *Id.* at ¶ 40.

Plaintiffs allege that, on or about February 5, 2023, both EPAs announced that their air monitoring systems did not detect any toxins or chemicals of any concern. Compl., ECF No. 1, PageID # 8, ¶ 41. Two days later, the EPAs allegedly informed the public that they might smell chemical odors but should not be concerned as the released chemicals had low odor thresholds. *Id.* at ¶ 43. The Plaintiffs allege that this statement was false. *Id.* at ¶ 44.

During this time period, Plaintiffs claim that both EPAs were also monitoring and testing the water for contaminants. *Id.* at PageID # 10, ¶ 57. Specifically, Plaintiffs allege that the EPAs used Photoionization Detectors ("PIDs"), which "are instantaneous readings that measure the exposure of many chemicals collectively rather than by specific contaminants." *Id.*

Plaintiffs claim that the testing and monitoring systems used by the Defendants were inadequate. *See, e.g.*, *id.* at ¶ 58-59. Plaintiffs contend that the use of PIDs was inadequate because PIDS are "inaccurate," *id.* at ¶ 58-59, and that testing water surface only, which the EPAs were allegedly doing, was not sufficient as the most accurate data can supposedly be found from testing the sediment "because residual hydrocarbons settle there." *Id.* at ¶ 60.

Instead, the Plaintiffs claim that the proper testing method was to "conduct personal air sampling over an 8-hour period known as a Time Weighted Average (TWA)." *Id.* at PageID # 11, ¶ 62. They believe that this type of testing is the best because "[t]esting for specific contaminants is the only true measure of determining whether air and water quality are safe for humans." *Id.* at ¶ 63. They further allege that the Defendants should not have done a controlled release of the

chemicals, claiming that burning the chemicals at issue here results in a dangerous, dioxin byproduct. *Id.* at ¶ 64. Plaintiffs claim that the Defendants failed to test for dioxins. *Id.* at ¶ 66.

On February 8, 2023, Plaintiffs allege that state officials lifted the evacuation order and announced that it was safe for residents to return to their homes. *Id.* at PageID # 8, ¶ 46. Although the evacuation order was lifted, they claim that officials continued to monitor the area for contamination and/or pollution. *Id.* at ¶ 48.

Plaintiffs further allege that when residents returned to their homes on February 10, 2023, the residents began to immediately (within 30 minutes of arriving) experience rashes, sore throats, nausea, and headaches. *Id.* at PageID # 9, ¶ 49. One such resident was Plaintiff Fish, who allegedly lives 100 yards from where the train derailed. *Id.* at PageID # 11, ¶ 69. Plaintiffs claim that Fish hired a private contractor to test her water and air for contaminants, but someone from either one of the EPAs or Norfolk Southern interfered with the testing. *Id.* at PageID # 12, ¶ 70. They allege that the Defendants were not concerned about these reports, saying that these were examples of individual sensitivities and not part of a broader problem. *Id.* at PageID # 9, ¶ 50. Then, on February 14, 2023, the Defendants allegedly discontinued their phosgene and hydrogen chloride air monitoring, while continuing to monitor for other chemicals 24/7. *Id.* at ¶ 51.

On February 15, 2023, Plaintiffs allege that Governor DeWine issued a statement stating that it was safe to drink the water in East Palestine. *Id.* at ¶ 52. Plaintiffs allege that this was done even though potentially contaminated soil had yet to be removed, which could further contaminate East Palestine's water supply. *Id.* at ¶ 53.

### C.  Plaintiffs file their lawsuit against the Defendants.

Plaintiffs filed the instant action, seeking declaratory and injunctive relief. *See generally* Compl., ECF No. 1. Specifically, they allege one count of state-created danger in violation of the substantive due process clause of the Fourteenth Amendment of the United States Constitution. *Id.*

at PageID # 12-14. Plaintiffs claim that the Defendants are liable due to their deliberate failure to conduct proper testing of the air and water in and around the East Palestine area as well as informing local residents that it was safe to return home when the Defendants knew or should have known that it was not safe to do so. *Id.* at PageID # 13, ¶ 78. They allege that these actions increase the risk that the Plaintiffs will be exposed to harmful chemicals. *Id.* Accordingly, they seek (1) a declaratory judgment finding that the Defendants "engaged in conduct that is a state-created danger to the Plaintiffs and all similarly situated residents of East Palestine, Ohio and the surrounding communities[,]" (2) a writ of mandamus compelling the Defendants to conduct proper testing, and (3) an injunction preventing the Defendants from falsely assuring the public that it the air and water surrounding East Palestine and other affected areas is safe until it can be shown to be so. *Id.* at PageID # ¶ 14, Prayer for Relief.

## III.     LAW AND ARGUMENT

### A.  Standard of Review

Fed. R. Civ. P. 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. A civil complaint must establish that the claims set forth are within the subject matter jurisdiction of the court. *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The plaintiff bears the burden of demonstrating that jurisdiction exists. *Id.* at 760.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept all of Plaintiffs' well-pleaded factual allegations as true and construe them

in a light most favorable to Plaintiffs." *Alshaibani v. Litton Loan Servicing, LP*, 528 Fed.Appx. 462, 463-64 (6th Cir. 2013). The Court, however, need not accept "legal conclusions or unwarranted factual inferences," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted). "[F]actual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

### B.  We the Patriots lacks standing to bring its claim.

We the Patriots cannot bring the claim it asserts because it lacks standing to sue on behalf of itself or its members. "Article III of the United States Constitution 'does not extend the judicial power to any legal question, wherever and however presented, but only to those legal questions presented in Cases and Controversies.'" (internal quotations omitted) *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009) (quoting *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc)). "Article III's 'case and controversy' requirement is not satisfied, and a court therefore has no jurisdiction, when the claimant lacks standing, that is, 'a sufficiently concrete and redressable interest in the dispute.'" *Fieger*, 553 F.3d at 961 (quoting *Warshak*, 532 F.3d at 525). Therefore, "[s]tanding is the 'threshold question in every federal case.'" *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)). Article III standing is a question of subject matter jurisdiction properly decided under 12(b)(1). *Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F.App'x 416, 419 (6th Cir. 2017).

"An organization can satisfy Article III's standing requirements by suing on its own behalf, called 'organizational standing,' or by suing on behalf of its members, called 'associational' or 'representative' standing." *Child.'s Health v. United States FDA*, No. 21-6203, 2022 U.S. App.

6

LEXIS 19234, at *6 (6th Cir. July 12, 2022) (citing *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021)) (additional citation omitted). Here, We the Patriots lacks standing under either theory.

To establish organizational standing, We the Patriots "must demonstrate that the 'purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.'" *Online Merchants*, 995 F.3d at 547 (citation omitted). In *Child.'s Health*, the organizational plaintiff argued that it alleged that the challenged conduct drained it of substantial organizational resources. 2022 U.S. App. LEXIS 19234 at *6. However, the Sixth Circuit found that this allegation was missing from the complaint. *Id.* Rather, the only mention in the complaint was that the organization filed a petition with the FDA. *Id.* at *7. But this was not sufficient to survive a standing challenge. *Id.* In another case, the Sixth Circuit found that an organization lacked organizational standing where it did not divert resources from its mission in response to the challenged act. *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020). In *Hargett*, the Sixth Circuit reasoned that the mission of the organization was "to bring, fund, and participate in this litigation * * * and spending its resources to address the voting inequities and irregularities throughout the county." *Id.* (internal citations and quotations omitted). Therefore, filing its underlying lawsuit did not divert from its mission, "[t]hat is its mission." *Id.*

We the Patriots lacks organizational standing here. Like in *Child.'s Health*, there are no allegations that the State Defendants' actions caused We the Patriots to expend or divert any of its resources. Notably, there is only one paragraph that contains any factual allegations related to We the Patriots. *See* Compl., ECF No. 1, PageID # 1-2, ¶ 2. Yet that paragraph merely alleges what We the Patriots' mission is inter alia "promoting constitutional rights, environmental safety –

especially the removal of radiological and chemical toxins, and other freedoms through * * * public interest litigation[.]" *Id.* Absent any allegations that We the Patriots expended additional resources as a result of the State Defendants' actions, they cannot establish organizational standing. Additionally, filing its complaint is entirely consistent with its stated mission of promoting constitutional rights and environmental safety through public interest litigation. Therefore, We the Patriots fails in the same way that the organizational plaintiff failed in *Hargett*. *See Hargett*, 947 F.3d at 982.

To establish associational standing, We the Patriots must allege facts sufficient to show "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Online Merchants*, 995 F.3d at 549 (internal citation omitted). "To establish Article III standing, a party must meet three requirements: (1) 'he must demonstrate injury in fact—a harm that is both concrete and actual or imminent, not conjectural or hypothetical'; (2) 'he must establish causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant'; and (3) 'he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact.' " (quotation marks omitted) *Davis v. Detroit Pub. Schs. Cmty. Dist.*, 899 F.3d 437, 443-444 (6th Cir. 2018) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,  529 U.S. 765, 771 (2000)). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)).

Here, We the Patriots failed to allege that at least one of its *named* members sustained an injury. In their Complaint, Plaintiffs allege that "[We the Patriots's] members include Ohio and

Pennsylvania residents affected by the matters complained of herein and share common claims to that brought by We The Patriots USA, Inc. in its representative capacity." Compl., ECF No. 1, PageID # 2, ¶ 2. But they fail to *name* a single member of their organization that was allegedly injured by the State Defendants' environmental testing protocols and/or directions to East Palestine residents as alleged in the Complaint. It is well established that in order to establish associational standing, the organization must actually provide the Court with the *name* of the alleged member(s) that suffered an injury. *Compare Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 256-57 (6th Cir. 2018) (finding that an organization could not establish associational standing for non-named members when none of the named members had standing in their own right) *with Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 555-56 (6th Cir. 2021) (finding that the Tennessee chapter of the NAACP established associational standing by naming and establishing one named member that otherwise had standing to sue). The only named individual in the Complaint is Plaintiff Fish, but Plaintiffs do not allege that she is a member of We the Patriots. *See id.* at PageID # 2, ¶ 3; *id.* at PageID # 11-12, ¶ 69-72. Again, the burden is on the Plaintiffs to sufficiently allege that at least one of their *named* members has standing to sue in his or her own right. *See Rosen*, 288 F.3d at 927; *Waskul*, 900 F.3d at 256-57. Because Plaintiffs failed to name a single member of We the Patriots that was injured, We the Patriots lacks associational standing.

### C. Plaintiffs' improper group pleading fails to satisfy Rule 8.

Plaintiffs also face another pleading hurdle: Rule 8 of the Federal Rules of Civil Procedure. Rule 8 is designed to give "defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). Pleadings that collectively refer to all defendants generally fail to do that. "By lumping all defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy" Rule 8. *Marcilis v. Twp. of*

9

*Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 22, 24 (2d Cir. 2001)); *see also Bondex Intl., Inc. v. Hartford Accident and Indemnity Co.*, 667 F.3d 669, 681 (6th Cir. 2011) (a pleading must "give the defendant fair notice of what the claim is and the grounds upon which it rests.").

Here, Plaintiffs group the Defendants together in several paragraphs, *see, e.g.*, Compl., ECF No. 1, PageID # 8-9, ¶ 47, 50-51, 53; *id.* at PageID # 13-14, ¶ 78-79, 81-82, and might be referring to the Defendants as "officials" in several other paragraphs, *id.* at PageID # 4, ¶ 16; *id.* at PageID # 7, ¶ 37, 40, but it is unclear. Director Vogel is not mentioned at all—but to allege her position as Director of the Ohio Environmental Protection Agency. *Id.* at PageID # 2, ¶ 7. And Governor DeWine is mentioned in exactly three allegations. *See id.* at PageID # 7, ¶ 40 (alleging DeWine activated the Ohio National Guard), PageID # 9, ¶ 52, 54 (alleging DeWine issued a press release indicating the water was safe to drink according to the Ohio EPA and that he drank tap water from the home of an East Palestine resident).

These allegations fail to state a claim against the State Defendants. No reasonable interpretation of these allegations can identify why these Defendants should be liable for a violation of due process. Plaintiffs fail to associate specific actions with particular individuals, and fail to explain how the specific action by a particular individual caused injury to any person or violated a legal duty. In short, the Complaint fails to state a claim on which relief can be granted as to the State Defendants.

### D. Plaintiffs fail to state a valid substantive due process claim under the state-created danger doctrine.

Plaintiffs also fail to state a valid substantive due process claim under the Fourteenth Amendment. Specifically, Plaintiffs purportedly bring their substantive due process claim under a theory of the state-created danger doctrine. *See* Compl., ECF No. 1, PageID # 13-14, ¶ 74-82. They

allege that the State Defendants' assurances to Plaintiffs—that it was safe for them to return home when they knew or should have known, but for flawed air- and water-quality testing, that it was not—increased the risk that Plaintiffs would be harmed by chemicals from the Norfolk Southern train derailment. *Id.* at PageID # 13, ¶ 78. However, their claim fails as a matter of law.

The Due Process Clause generally does not impose upon the state a duty to protect individuals from harm by private actors. *Deshaney v. Winnebago Cty. Dept. of Social Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There is no question that the tragic incident was caused by the derailment of a train owned and operated by Norfolk Southern, a privately held company. However, "the so-called state-created danger exception provides that liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (internal quotations and citation omitted); *see also McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 464 (6th Cir. 2006).

To establish a substantive due process claim under the state-created danger doctrine, a plaintiff "must establish three elements: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff." *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp.2d 775, 792 (N.D. Ohio 2013) (citing *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006)). "This is a particularly demanding standard requiring that the state's affirmative action exposed the plaintiff to a danger she wasn't already subjected to." *Id.*

11

**1.  Plaintiffs cannot demonstrate an affirmative act that created or increased the risk.**

In this case, the State Defendants did not commit an affirmative act under the state-created danger theory. A key question for this element "is not whether the victim was safer during the state action, but whether he was safer before the state action than he was after it." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (citing *DeShaney*, 489 U.S. at 201); *see also Bukowski v. City of Akron*, 326 F.3d 702, 706 (6th Cir. 2003). The Sixth Circuit has held that there was no affirmative act that created or increased the risk where "the victim would have been in about the same or even greater danger even if the state officials had done nothing." *McQueen*, 433 F.3d at 466.

For example, in *Cartwright*, the police picked up the plaintiff while he was walking at night on the side of the highway and dropped him off at a convenience store parking lot. 336 F.3d at 489. He was later hit by a truck and killed two miles away from the store. The Sixth Circuit rejected the argument that the police committed an affirmative act, because the police transported the plaintiff from a more dangerous place to a less dangerous one. *Id*. at 492. "In other words, if the police had done nothing, the plaintiff would have been in greater danger than that resulting from the officers' intervention." *McQueen*, 433 F.3d at 466. Similarly, in *Bukowski*, the police picked up a mentally-disabled plaintiff from a third party's home but later returned her there and the plaintiff was subsequently raped by the third party. 326 F.3d at 705-06. The Sixth Circuit "rejected the plaintiff's argument that the police had committed an affirmative act under the state-created-danger theory, because the police had merely returned the plaintiff to a preexisting danger." *McQueen*, 433 F.3d at 466 (citing *Bukowski*, 326 F.3d at 709). "[I]f the police had done nothing, the plaintiff would have faced just as much danger as she in fact faced after the officers' actions." *Id.* This same reasoning also applies in cases involving environmental dangers. *See Paige v. New*

*York City Hous. Auth.*, No. 17cv7481, 2018 U.S. Dist. LEXIS 137238, at *31 (S.D.N.Y. Aug. 14, 2018) (denying substantive due process claim arising from exposure to lead in public housing where plaintiffs claimed the methodology for identifying at-risk apartments was inadequate and public officials lied to residents about the environmental hazard); *see also Walker v. City of E. Chicago*, No. 2:16 CV 367, 2017 U.S. Dist. LEXIS 160729, at *14 (N.D.Ind. Sep. 29, 2017) (denying a substantive due process claim arising from lead and arsenic in public housing where plaintiffs alleged that a public official promised safe housing while knowing of dangers posed by the contamination).

The circumstances in this case are analogous to that of *Cartwright* and *Bukowski*. The danger to Plaintiff Fish and the unnamed members of We the Patriots ("the Unnamed Members") was created by the Norfolk Southern train derailment. This danger existed irrespective of any conduct by the State Defendants. That is, Plaintiff Fish and the Unnamed Members were *already* exposed to the chemicals due to the unfortunate fact that they live near the site of the train crash. If the State Defendants had done nothing (i.e., if Governor DeWine and Director Vogel had not given any assurances that it was safe to return home), Plaintiffs would have faced the same dangers—and probably would have been in an even worse position absent the shelter-in-place and evacuation orders. *See* Compl., ECF No. 1, PageID # 7 at ¶ 40. Therefore, just as the plaintiffs in *Cartwright* and *Bukowski* would have faced at least the same danger if the police had not acted, Plaintiff Fish and the Unnamed Members would have faced the danger of exposure to chemicals even if the State Defendants had not acted.

To the extent Plaintiffs are arguing that the State Defendants' affirmative act was "failing to conduct proper testing of air and water quality in and around East Palestine," *id.* at PageID # 13, ¶ 78, or failing to warn the public of certain dangers, *id.* at PageID # 9, ¶ 53, that argument

also lacks merit. As a matter of law, "[a] failure to act is not an affirmative act under the state created danger theory." *Devine v. Sevel*, No. 1:16 CV 2994, 2018 U.S. Dist. LEXIS 82753, at \*13 (N.D.Ohio May 16, 2018) (citing *Cartwright*, 336 F.3d at 493); *see also Sargi v. Kent City Bd. of Edn.*, 70 F.3d 907, 912 (6th Cir. 1995).

### 2. Plaintiffs cannot show that they were in "special danger."

In addition to establishing an affirmative act, "plaintiffs alleging a constitutional tort under § 1983 [must] show [a] "special danger."" *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998). A special danger exists "where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.* The Sixth Circuit has "set a high bar for the special danger requirement." *McQueen*, 433 F.3d at 468.

In *Kallstrom*, the "special danger" requirement was satisfied where the City of Columbus's release of private information from undercover officers' personnel files to defense counsel for gang members involved in the undercover investigation "placed the personal safety of the officers and their family members, as distinguished from the public at large, in serious jeopardy." 136 F.3d at 1067. In contrast, this requirement was not met in *Schroder v. City of Fort Thomas*, 412 F.3d 724, 729 (6th Cir.2005), where a city's failure to lower the speed limit on a residential street, despite residents' warnings about speeding traffic using the street as a cut-through, posed a general traffic risk to pedestrians and other automobiles rather than a risk to "a discrete class of individuals." *See also Janan v. Trammell*, 785 F.2d 557, 560 (6th Cir. 1986) (release of a violent parolee who then killed plaintiffs' son only endangered plaintiff as a member of the public at large).

Here, Plaintiffs are much more like the general public at risk in *Schroder* and *Janan* than the few officers at risk in *Kallstrom*. Plaintiffs even admit as much when they allege that their risk of harm was like that of "every other similarly situated East Palestine, Ohio, resident," Compl.,

14

ECF No. 1, PageID # 13, ¶ 80, a town of "roughly 5,000 people," *id.* at PageID # 4, ¶ 16. Plaintiffs are not at risk as a discrete class of individuals and face no special danger different from that of the general public.

### 3. Plaintiffs cannot demonstrate State culpability.

To establish the third element of the state-created-danger theory, a plaintiff "must demonstrate that the state acted with the requisite culpability." *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002). The standard for this element has two parts: knowledge of the risk and response to the risk. *Doe v. Jackson Local School Dist. Bd. of Edn.*, 954 F.3d 925, 933 (6th Cir. 2020). That is, an official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Ewolski*, 287 F.3d at 513). "Having drawn the inference, the official next must act or fail to act in a manner demonstrating reckless or callous indifference toward the individual's rights." *Id.* (internal quotation marks and citation omitted).

With regard to the first part, "a public official must know of more than a general risk of harm. The official must know of the specific risk that later develops." *Doe*, 954 F.3d at 934. In *McQueen*, for example, a first-grade student ("John Smith") fatally shot another student ("Jane Doe") when the children's teacher left them unsupervised. 433 F.3d at 463. Before this shooting, Smith had been "involved in several incidents where he attacked other students, sometimes beating them up and other times stabbing them with a pencil." *Id.* at 462. Doe's mother sued the teacher and alleged that she "knew that Smith might violently assault another student" and ignored that risk by leaving him unsupervised. *Id.* at 469. But the teacher's knowledge of Smith's "sometimes violent behavior" was not enough to prove that she knew that Smith posed a risk of gun violence. *Id.* (citation omitted). The teacher had no notice that Smith "would escalate from hitting with fists, feet, and pencils" to shooting with a gun. *Id.* at 470.

Here, the Plaintiffs fail to allege that the Defendants knew that a specific risk of harm would develop. In fact, Plaintiffs' allegations suggest that Defendants did not know of a general risk of harm, let alone a specific harm, as Defendants DeWine and Regan toasted and drank a glass of tap water shortly after the train derailment and environmental testing, purportedly as a public display to demonstrate its safeness. Compl., ECF No. 1, PageID # 9, ¶ 54. Plaintiffs allege that the State Defendants' knowledge of the inadequacy of their testing methods would lead to "false assurances of safety." *Id.* at PageID # 14, ¶ 81. But the knowledge of an inadequate environmental test is not enough to prove that Plaintiffs would face the risk of exposure to harmful chemicals that could result in their deaths and long-term health issues. Subjective recklessness can "be proven circumstantially by evidence showing that the risk was so obvious that the official had to have known about it." *Bukowski*, 326 F.3d at 710. But here, Plaintiffs do not allege facts to suggest that the risk was obvious.

With regard to the second part, for a public official "[t]o act with reckless or callous indifference, he must do more than be aware of a substantial risk of serious harm." *Doe*, 954 F.3d at 934 (quoting *Hunt v. Sycamore Community School Dist. Bd. of Edn.*, 542 F.3d 529, 542 (6th Cir. 2008)). "The official's response to that harm must also be 'conscience shocking.'" *Id.* (quoting *Schroder*, 412 F.3d at 731).

Here, the State Defendants' responses to the risk do not show the "callous disregard" or "conscience shocking" behavior that the state-created-danger cases require. *See Schroder*, 412 F.3d at 731. The State Defendants did not ignore the immediate risk that Plaintiffs would face from exposure to harmful chemicals from the derailment. Far from it. Soon after the derailment "Defendant DeWine activated the Ohio National Guard to assist East Palestine authorities," and officials "issued a shelter-in-place order for the entire town of East Palestine and an evacuation

order for people living within a mile radius of the train crash because of the risk of explosion."
Compl., ECF No. 1, PageID # 7, ¶ 40. They worked quickly to monitor the air and water "for
volatile organic compounds" and "contaminated water." *Id.* at ¶ 39-40. The State Defendants'
testing and monitoring of the air and water immediately after the derailment could only have
lessened the risks posed by the Norfolk Southern-created danger.  Nonetheless, Plaintiffs argue
that the State Defendants should have used different methods for testing the air and water to obtain
more accurate data before giving assurances that it was safe to return home. *See, e.g*, *id.* at PageID
# 10, ¶ 58-60. Again, the Plaintiffs' dispute with the *type* of testing used falls well short of
sufficiently alleging that the State Defendants acted in callous disregard such that they, and not
Norfolk Southern, are culpable for the harm caused to Plaintiffs.  *See Doe*, 954 F.3d 936; *Ewolski*,
287 F.3d at 514.

In light of the foregoing, the Plaintiffs have failed to establish the elements of the state-
created danger exception to invoke the due process protection of the Fourteenth Amendment, and
their claim should be dismissed.

### 4.  Plaintiffs cannot rely on vicarious liability to support their 1983 claim.

Additionally, to the extent Plaintiffs are pleading that Governor DeWine or Director Vogel
are liable as supervisors of their employees, that also fails. "'[V]icarious liability is inapplicable
to . . . § 1983 suits,' so a plaintiff must plead and prove 'that each Government-official defendant,
through the official's own individual actions, has violated the Constitution.'" *Doe v. Jackson Local
School Dist. Bd. of Edn*., 954 F.3d 925, 934 (6th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676); *see
also McQueen*, 433 F.3d at 470. In two allegations, the Plaintiffs seem to allege that the Defendants
acted through their employees. *See* Compl., ECF No. 1, PageID # 8, ¶ 47 ("Defendants used East
Palestine fire chief Keith Drabick" to state that the water was safe to drink), PageID # 9, ¶ 50
("Defendants and their subordinates" brushed off sensitivities to chemicals). "[A] supervisory

official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (quoting *Hays*, 668 F.2d at 874). Plaintiffs do not come anywhere near the requisite showing for supervisor liability. Accordingly, dismissal is warranted pursuant to Fed. R. Civ. P 12(b)(6).

### E.  Plaintiffs fail to sufficiently state a valid mandamus claim.

Finally, Plaintiffs fail to state a valid mandamus claim. 28 U.S.C. § 1651(A) provides, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." However, "[a] writ of mandamus is an extraordinary remedy, and is intended to provide a remedy only if the plaintiff has exhausted all other avenues of relief and the defendant owes the plaintiff a clear nondiscretionary duty." *O'Georgia v. U.S. Dep't of Justice*, 370 F. Supp. 2d 657, 659 (N.D. Ohio 2005) (citing *Willis v. Sullivan*, 931 F.2d 390, 395 (6th Cir. 1991) (citing *Heckler v. Ringer*, 466 U.S. 602, 616-17, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984)). Thus, in order to be entitled to mandamus, a plaintiff must allege "that he 'has a clear right to relief,' that the government official has a 'clear duty to act,' and that he has 'no other adequate remedy.'" *Baaghil v. Miller*, 1 F.4th 427, 435 (6th Cir. 2021) (quoting *Carson v. U.S. Off. of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011)). Further, "[t]here is no 'duty owed' to the petitioner unless it is wholly non-discretionary, meaning 'plainly defined and peremptory.'" *Smith v. United States Bureau of Prisons*, No. 7:17-cv-124-KKC, 2017 U.S. Dist. LEXIS 118421, at *6 (E.D.Ky. July

18

28, 2017) (quoting *Ryon v. O'Neill*, 894 F.2d 199, 205 (6th Cir. 1990)). Here, Plaintiffs have not sufficiently plead any of three requirements for mandamus relief.

Plaintiffs have not alleged that they possessed a clear legal right to their preferred air and water testing methods. *See* Compl., ECF No. 1, PageID # 14. Although Plaintiffs generally allege that their preferred testing and monitoring methods are better for a myriad of reasons, *see, e.g.*, Compl., ECF No. 1, PageID # 10-11, ¶ 56-67, they completely fail to cite to any statute or regulation that requires the testing they prefer. *See Baaghil*, 1 F.4th at 435 (finding that the plaintiff did not have a clear legal right to have his petition considered in 30 days when there was no statute that required the petition to be considered in 30 days).

Similarly, Plaintiffs have not sufficiently pleaded a clear legal duty on the behalf of the State Defendants to implement the testing preferred by Plaintiffs. "The source of the mandatory duty can be a statute, a regulation, or result from judicial precedent." *Intermodal Techs., Inc. v. Mineta*, 413 F. Supp. 2d 834, 840 (E.D.Mich. 2006) (citing *Buchanan v. Apfel*, 249 F.3d 485 (6th Cir. 2001), *Brewer v. Dahlberg*, 942 F.2d 328 (6th Cir. 1991), and *In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995)). Again, there are no allegations in the Complaint that establish a duty under a statute, regulation, or the common law that required the State Defendants to employ the Plaintiffs' preferred testing and monitoring methods. Rather, what type of testing and monitoring to employ fell squarely within the State Defendants' discretion, which is not controllable in mandamus. *See Bailey v. City of Broadview Heights*, 721 F. Supp. 2d 653, 662 (N.D.Ohio 2010) ("mandamus will not lie to control the exercise of that discretion").

Last, Plaintiffs have a clear, adequate remedy at law, i.e., an action for injunctive relief under 42 U.S.C. § 1983. Section 1983 is not limited to actions for monetary damages but also encompasses claims for injunctive relief. *See Mitchum v. Foster*, 407 U.S. 225, 242 (1972)

("Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress"). While Plaintiffs failed to properly plead a claim under 42 U.S.C. § 1983, an injunction was nevertheless available. Therefore, any claim for mandamus necessarily fails.

## IV.     CONCLUSION

For the foregoing reasons, the State Defendants respectfully ask this Court to dismiss the Complaint (ECF No.1) brought against them.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Michael A. Walton*
MICHAEL A. WALTON (0092201)*
*Counsel of Record*
ALLISON D. DANIEL (0096186)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Michael.Walton@OhioAGO.gov
Allison.Daniel@OhioAGO.gov

*Counsel for Defendants*
*Mike DeWine and Anne Vogel*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, the foregoing was filed electronically. Notice of this

filing will be sent to all parties for whom counsel has entered an appearance by operation of the

Court's electronic filing system. Parties may access this filing through the Court's system.


*/s/ Michael A. Walton*
MICHAEL A. WALTON (0092201)
Assistant Attorney General


**CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this

memorandum adheres to the page limitations set forth in Rule 7.1(f).


*/s/ Michael A. Walton*
MICHAEL A. WALTON (0092201)
Assistant Attorney General