# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WE THE PATRIOTS USA, INC. et al., | ) | CASE NO.: 4:23-CV-00382 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| UNITED STATES EPA, et al., | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This Court is without jurisdiction to hear Plaintiffs' We the Patriots, USA, and Courtney Fish's (collectively, "Plaintiffs") Complaint seeking injunctive, mandamus, and declaratory relief against the United States Environmental Protection Agency ("U.S. EPA") and Michael Regan, in his official capacity as Administrator of the U.S. EPA ("Administrator Regan") (collectively, "Federal Defendants"). Not only have Plaintiffs failed to identify a relevant waiver of the Federal Defendants' sovereign immunity, but the jurisdiction-stripping provision of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(h), deprives this Court of subject-matter jurisdiction over Plaintiffs' Complaint. Thus, the Court should dismiss the case under Fed. R. Civ. P. 12(b)(1). Moreover, Plaintiffs fail to state a claim for a Constitutional violation, and the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).[1]

## FACTS

This case arises out of the U.S. EPA's and the Ohio EPA's response to the Norfolk Southern train derailment in East Palestine, Ohio. On February 3, 2023, at around 8:55 p.m., a Norfolk Southern freight train derailed in East Palestine, Ohio. (Compl., ECF No. 1, ¶11, PageID # 3.) Of the 150 train cars, approximately 20 cars contained hazardous materials, including chloroethene (vinyl chloride), butyl acrylate, ethylene glycol monobutyl ether, 2-ethyhexyl acrylate, isobutylene, and benzene residue. (*Id.* ¶10.) Some cars caught fire, sending hazardous chemicals into the air, and the derailment caused some cars to spill hazardous materials into local

---

[1] Ohio Governor Mike DeWine and Ohio EPA Administrator Anne Vogel (collectively, "State Defendants"), moved to dismiss under Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss, ECF No. 14, PageID #91-119.) The State Defendants argue, among other things, that Plaintiff We the Patriots, a non-profit organization, lacks standing, and that Plaintiffs are not entitled to mandamus relief. (*Id.*) In addition to moving to dismiss under Fed. R. Civ. P. 12(b)(1), the Federal Defendants join the State Defendants and incorporate their arguments as if rewritten herein.

waterways. (*Id.*, ¶¶11-13.) Plaintiffs allege that one of the cars containing vinyl chloride malfunctioned and was unable to release the chemicals inside, and that the pressure build-up could have caused an explosion. (*Id.*, ¶17, PageID # 4.)

Norfolk Southern reported the derailment at 10:53 p.m. on February 3, 2023, and the U.S. EPA arrived on-site by 2:00 a.m. on February 4, 2023. (*Id*, ¶¶37-38, PageID # 7; Background, https://www.epa.gov/east-palestine-oh-train-derailment/background.)  Plaintiffs allege that the U.S. EPA, along with the Ohio Environmental Protection Agency ("Ohio EPA"), undertook various methods to restrict the flow of contaminated waters (*Id.*, ¶39.) The U.S. EPA began conducting air monitoring for volatile organic compounds, including vinyl chloride and butyl acrylate, in the affected area. (*Id.*, ¶38.) Plaintiffs allege that officials issued a shelter-in-place order for the residents of East Palestine and an evacuation order for those living within one mile of the train derailment. (*Id.*, ¶16, PageID # 4.)

Plaintiffs allege that on the afternoon of February 6, 2023, emergency crews began a controlled burn of several cars, in a process known as a controlled release. (*Id.*, ¶¶18-19.) Plaintiffs contend that the process released "a large plume of thick black smoke in the form of a mushroom cloud," allegedly sending toxic chemicals into the atmosphere, soil, and nearby water sources. (*Id*., ¶¶19-23, PageID # 4-5.) Plaintiffs allege that the release affected both Ohio and Pennsylvania residents, who began to report "noxious fumes, numbed tongues and lips from the derailment, fire, and toxic chemical disbursement and subsequent explosion." (*Id*., ¶22, PageID # 5.)

Plaintiffs allege that, on or about February 5, 2023, both the Ohio EPA and the U.S. EPA announced that their community air monitoring readings did not detect any contaminants of concern. (*Id.*, ¶41, PageID # 8.) Plaintiffs further allege that on February 7, 2023, the Ohio and U.S. EPAs informed the public that while they might smell chemical odors, they should not be concerned as the released chemicals had low odor thresholds. (*Id.*, ¶43.) Plaintiffs maintain that

this statement was false and designed to alleviate public and political pressure. (*Id.*, ¶44.) In addition, Plaintiffs claim that while both EPAs were testing the air and water for contaminants, their testing was "seriously flawed." (*Id.*, ¶56, PageID # 10.) Plaintiffs allege that the EPAs tested only surface waters and therefore did not obtain "the most accurate data" or find "the most critical contaminants." (*Id.*,  ¶60.) Plaintiffs further allege that the EPAs "refused to deploy the most reliable testing possible" for air contamination because they deployed real-time air monitoring that measured the exposure of many chemicals collectively. (*Id.*, ¶¶57, 59.) According to Plaintiffs, the "proper" way to monitor air quality is to conduct air sampling over an 8-hour period and to test for specific contaminants. (*Id.*, ¶¶62-63, PageID # 11.) Plaintiffs allege that on February 14, 2023, the Ohio and U.S. EPAs discontinued phosgene and hydrogen chloride community air monitoring but continued 24-hour community air monitoring for other chemicals. (*Id.*, ¶51, PageID # 9.)

On February 21, 2023, the U.S. EPA, through a delegation of authority from the President under CERCLA, codified at 42 U.S.C. § 9601, issued a Unilateral Administrative Order for Removal Actions ("Removal Order") in response to the East Palestine derailment. (Removal Order ¶1, attached hereto as Exhibit A.)[2] The Removal Order set forth proposed "removal actions . . . to abate an imminent and substantial endangerment to the public health or welfare or the environment that may be presented by the actual or threatened release of hazardous substances[.]" (*Id*. ¶¶2, 25(h).) These dangers included "actual or potential contamination of drinking water supplies or sensitive ecosystems" and "high levels of hazardous substances and pollutants or contaminants in soils largely at or near the surface[.]" (*Id*. ¶25(g)(2), (g)(4).) To address them, the Removal Order requires Norfolk Southern to, among other things, develop and implement "an air monitoring and

---

[2] Available at: https://www.epa.gov/system/files/documents/2023-02/02%2021%2023%20Norfolk%20Southern%20Removal%20UAO%20-%20Signature%201-508checked.pdf (last accessed June 19, 2023.)

sampling plan" and "a plan for the identification and delineation of the extent of contamination for: (1) Surface and subsurface soils; (2) Surface waters and sediments; (3) Groundwater; [and] (4) Drinking water sources[.]" (*Id*. ¶36(c )-(d).) In addition to conducting its own air testing, the U.S. EPA continues to oversee work being conducted by Norfolk Southern pursuant to these plans as part of U.S. EPA's overall responsibility to supervise the Removal Action.

On February 27, 2023, Plaintiffs filed a Complaint against the U.S. EPA, Administrator Regan, Ohio Governor Mike DeWine in his official capacity, and Anne M. Vogel, Administrator of the Ohio EPA, in her official capacity. Plaintiffs seek a declaratory judgment that through their response to the derailment and their testing methodologies, the defendants have "engaged in conduct that is a state-created danger to the Plaintiffs and all similarly situated residents of East Palestine, Ohio and the surrounding communities." (Compl., ECF No. 1, PageID # 14.) Plaintiffs also seek a writ of mandamus ordering defendants to conduct alternative contaminant testing and an injunction "barring Defendants from providing the residents of East Palestine, Ohio and the surrounding areas" with assurances regarding air and water quality, until it is shown to be safe by the Plaintiffs' preferred testing mechanisms. (*Id*.) In short, Plaintiffs seek to alter the Federal Defendants' removal plan under CERCLA and disrupt its execution. (*See id.*) The Court is without jurisdiction to entertain Plaintiffs' requests.

## LAW AND ARGUMENT

### I.  <u>Standard of Review</u>

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The plaintiff bears the burden of proving that subject-matter jurisdiction exists. *Id.* A plaintiff must plead and prove the requisite jurisdictional facts. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939). If the plaintiff cannot meet this burden, the case should be dismissed.

When faced with a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden to prove that subject-matter jurisdiction exists. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). In deciding a Rule 12(b)(1) motion, the Court may, if necessary, consider information not contained in the pleadings. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *City of Olmsted Falls v. U.S. E.P.A.*, 266 F. Supp. 2d 718, 721-22 (N.D. Ohio 2003), *aff'd*, 435 F.3d 632 (6th Cir. 2006). A challenge to a court's subject matter jurisdiction may present as either a "'facial attack or a factual attack.'" *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). In a facial attack, a "movant accepts the alleged jurisdictional facts as true and 'questions merely the sufficiency of the pleading' to invoke federal jurisdiction." *Id.* (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). In a factual attack, a movant presents evidence outside of the pleadings to contest the alleged jurisdictional facts. *Id.*

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), challenges the complaint's legal sufficiency. A complaint survives such a motion if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## II.  Plaintiffs Do Not Identify an Applicable Waiver of Sovereign Immunity Permitting Suit Against Federal Defendants.

Because Plaintiffs have not identified any waiver of the government's sovereign immunity, this Court lacks subject-matter jurisdiction over the Complaint. It is well-settled that the United States, as sovereign, is immune from suit except as it specifically consents to be sued, and the

terms of its consent must be strictly construed. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Testan*, 424 U.S. 392, 399 (1976), *superseded by statute on other grounds by*, Civil Service Reform Act of 1978, 5 U.S.C. § 5596(b)(4). The immunity bar is jurisdictional in nature, such that a court lacks jurisdiction to consider a lawsuit against the United States unless it has consented to suit. *See Mitchell*, 463 U.S. at 212. A waiver of sovereign immunity "must be express, clear and unequivocal." *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998) (citation omitted). A waiver of the Government's sovereign immunity is to be strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Plaintiffs have the burden to identify a waiver of sovereign immunity in order to proceed with a claim against the United States. *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000).

The U.S. EPA, as an agency of the United States, and Administrator Regan, in his official capacity as the head of an agency of the United States, are subject to the protections of sovereign immunity. *See, e.g.*, *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993). Yet, the Complaint identifies no statute waiving the Federal Defendants' sovereign immunity. None of the statutes Plaintiffs cite as a basis for federal jurisdiction, Compl. ¶8, contain waivers of the government's sovereign immunity. The federal question jurisdictional statute, 28 U.S.C. § 1331, "is not a general waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain." *Whittle*, 7 F.3d at 1262; *see also Reed*, 146 F. 3d. at 398. Similarly, the All Writs Act, 28 U.S.C. § 1651, "does not provide federal courts with an independent source of jurisdiction to issue writs, but only with the authority to issue writs 'in aid of their respective jurisdictions.'" *Huron Mt. Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 396 (6th Cir. 2013) (quoting *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011)). In other words, 28 U.S.C. § 2201 merely permits the issuance of writs in aid of the jurisdiction which a court independently possesses. *Tropf v. Fid. Nat'l Title Ins., Co.*, 289 F.3d 929, 943 (6th Cir. 2002).

Plaintiffs' reference to the Declaratory Judgment Act, 28 U.S.C. § 2201 (Compl., ECF No. 1, ¶8, PageID # 2), does not save their Complaint. The Declaratory Judgment Act is neither an independent basis for subject-matter jurisdiction, nor a waiver of the United States' sovereign immunity. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007); *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007.) The Act merely grants the Court the power to issue a declaratory judgment when jurisdiction otherwise exists. *Davis*, 499 F.3d at 594; *Toledo*, 485 F.3d at 839; *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). In other words, the Declaratory Judgment Act is a remedy, not a cause of action. Because Plaintiffs have not adequately pled an independent source of subject-matter jurisdiction under any other federal statute, their citation to the Declaratory Judgment Act is insufficient to confer jurisdiction.

Finally, 28 U.S.C. § 1983 refers to persons acting under color of state or local law, and federal entities acting under color of federal law cannot be sued under 28 U.S.C. § 1983. *Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997); *see, e.g.*, *Snyder v. United States*, 990 F. Supp. 2d 818, 836 (S.D. Ohio 2014), *aff'd*, 590 F. App'x 505 (6th Cir. 2014) ("Defendant Giordano, of course, is an employee of the FBI and thus a federal actor. Therefore, he cannot be sued under Section 1983."); *Shepherd v. Sheldon*, No. 1:11 CV 127, 2011 WL 2971965, at *7 (N.D. Ohio July 21, 2011) (Gaughan, J.) (Section 1983 "does not apply to defendants as they are federal actors and plaintiffs do not allege that these federal defendants were *acting* under color of state law.") (Citing *Strickland*, 123 F.3d at 866.) Thus, because the Complaint identifies no waiver of sovereign immunity permitting suit against the Federal Defendants, Plaintiffs fail to establish subject matter jurisdiction. This Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(1).

III.    **The Court Has No Jurisdiction Over Plaintiffs' Claim Because the U.S. EPA has
Initiated and is Taking CERCLA Removal Actions.**

Even assuming Plaintiffs could identify an applicable waiver of sovereign immunity,
CERCLA deprives federal courts of jurisdiction over challenges to EPA's removal or remedial
actions. *See* 42 U.S.C. § 9613(h). Because U.S. EPA is taking CERCLA removal actions, including
air, soil, and water testing, and because Plaintiffs challenge these actions (including the
methodologies U.S. EPA has selected for that testing), this Court lacks subject matter jurisdiction
over Plaintiffs' Complaint.

A.    **Section 9613(h) Divests Federal Courts of Jurisdiction Over Any Claim that
Challenges an Ongoing Removal Action.**

Pursuant to 42 U.S.C. § 9613(h), "[n]o Federal court shall have jurisdiction under Federal
law . . . to review any challenges to removal or remedial action selected under section 9604 of this
title, or to review any order issued under section 9606(a) of this title[.]"[3] Courts recognize this as
a "'blunt withdrawal of federal jurisdiction,'" *Giovanni v. United States Dep't of Navy*, 906 F.3d
94, 103 (3d Cir. 2018) (quoting *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325,
328 (9th Cir. 1995)), "over challenges" that "concern the merits of [a] particular removal or
remedial action," *Reardon v. United States*, 947 F.2d 1509, 1514 (1st Cir. 1991). *See McClellan*,
47 F.3d at 328 ("On its face, then, section 113(h) precludes contemporaneous challenges to
CERCLA cleanups."); *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1249 (10th Cir. 2006)
(same). The word "any" in the section has an "expansive meaning . . . [that] must be read as
referring to all it describes." *Broward Gardens Tenants Ass'n v. U.S. E.P.A.*, 311 F.3d 1066, 1075
(11th Cir. 2002) (citations omitted). As such, the bar "does not distinguish between constitutional

---

[3] Section 9613(h) includes limited exceptions, none of which apply here. *See* 42 U.S.C. §
9613(h)(1)-(5).

and statutory challenges; instead, it delays judicial review of 'any' challenges" to response actions. *Id.*; *see Barmet Aluminum Corp. v. Reilly,* 927 F.2d 289, 292-94 (6th Cir.1991) (reviewing legislative history and concluding that section § 9613(h) applies to constitutional claims); *Steep v. Monsanto Rsch. Corp.*, No. C-3-91-468, 1993 WL 1367349, at *2 (S.D. Ohio Sept. 30, 1993) (same).

The underlying value judgment is straightforward: "Congress has determined that the need for swift execution of CERCLA cleanup plans outweighs" the interests served by permitting judicial review during the pendency of a cleanup. *McClellan*, 47 F.3d at 329. This "prevent[s] time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites," *Cannon v. Gates*, 538 F.3d 1328, 1332 (10th Cir. 2008) (citation omitted), and permits a "quick response to serious hazards" that is "paramount," *McClellan*, 47 F.3d at 329. The test for what constitutes a challenge reflects this aim: section 9613(h) prohibits a challenge if it "interferes with the implementation of a CERCLA remedy" by "impact[ing] the remedial action selected[.]" *Broward Gardens Tenants Ass'n*, 311 F.3d at 1072. Classic examples involve requests for injunctive relief "demand[ing] that a defendant engage in activities that could have been part of the cleanup plan," *Giovanni*, 906 F.3d at 111, and claims that otherwise seek to "alter[] the terms of the cleanup order." *Beck v. Atl. Richfield Co.*, 62 F.3d 1240, 1243 (9th Cir. 1995).

A CERCLA removal action, as defined in the statute, includes not only "the cleanup or removal of released hazardous substances from the environment," but also "such actions as may be necessary to monitor, assess, and evaluate the release," and "action taken under section 9604(b) of this title." 42 U.S.C. § 9601(23); *see Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 843 (6th Cir. 1994) (Concluding, "Congress intended that the term 'removal action' be given a broad interpretation" that "encompasses both physical removal" and related "'monitoring, assessing, and

9

evaluating' activities." (quoting 42 U.S.C. § 9601(23)). Section 9604(b) in turn authorizes "investigations," "planning," "information gathering," and other actions "necessary or appropriate" for cleanup. 42 U.S.C. § 9604(b)(1). Thus, because the term "removal action" encompasses both the preliminary investigation and hazard assessment methods, so too does 42 U.S.C. § 9613(h) bar any suit seeking to challenge those same activities, among myriad other activities. Efforts to force the government to adopt specific testing methods, as here, fall squarely within actions proscribed by 42 U.S.C. § 9613(h).

**B.      EPA has Initiated a CERCLA Removal Action at the East Palestine Site Under § 9604.**

On February 21, 2023, U.S. EPA issued a Removal Order in response to the East Palestine derailment. (Removal Order ⁋1, Ex. A.) It set forth proposed "removal actions . . . to abate an imminent and substantial endangerment to the public health or welfare or the environment that may be presented by the actual or threatened release of hazardous substances[.]" (*Id*. ⁋⁋2, 25(h).) These dangers included "actual or potential contamination of drinking water supplies or sensitive ecosystems" and "high levels of hazardous substances and pollutants or contaminants in soils largely at or near the surface[.]" (*Id*. ⁋25(g)(2), (g)(4).) To address them, the Removal Order requires, among other things, Norfolk Southern to develop and implement "an air monitoring and sampling plan" and "a plan for the identification and delineation of the extent of contamination for: (1) Surface and subsurface soils; (2) Surface waters and sediments; (3) Groundwater; (4) Drinking water sources[.]" (*Id*. ⁋36(c)-(d).) The Removal Order also explicitly invoked § 9613(h), stating that "[n]o action or decision by EPA pursuant to this Order shall give rise to any right to judicial review[.]" (*Id*. ⁋74.)

U.S. EPA is presently conducting and overseeing removal activities pursuant to the Removal Order. For example, in addition to the U.S. EPA's ongoing air monitoring, the Air

Sampling and Analysis Plan ("Air Plan," attached hereto as Ex. B)[4] delineates "a multilayered air monitoring and air sampling approach in work areas where cleanup and remediation operations are ongoing and in community areas surrounding the incident site." (*Id*. at 13.) Testing methods include use of "free-roaming handheld real-time air monitoring," "stationary real-time air monitoring," and collection of "air samples [that are] . . . sent to an off-site laboratory for chemical analysis." (*Id*. at 37.) Similarly, the Soil Sampling Plan[5] delineates specific "soil inspection and sampling efforts . . . for surface soil assessment" in the surrounding community to determine "whether shallow soil within that area has been impacted by" the controlled release of chemicals. (*Id*. at 1.) Plaintiffs want to alter these testing plans by asking this Court to substitute Plaintiffs' judgment for that of U.S. EPA.

### C.    Section § 9613(h) Divests This Court of Jurisdiction Over the Complaint.

This lawsuit seeks to prevent the government from using allegedly "flawed" contaminant testing methods as part of the removal action, and instead force U.S. EPA to adopt methods that Plaintiffs deem "industry standard." (Compl., ECF No. 1, ¶¶56, 82, PageID # 10, 14.) However, section 9613(h) precludes such judicial "challenges to removal [] actions." Plaintiffs' effort to impose alternative testing methodologies on EPA's removal plan is barred by statute. *See* 42 U.S.C. § 9613(h).

In *Broward Gardens Tenants Association*, the Eleventh Circuit rejected a similar challenge premised upon the imposition of different "standards." *See* 311 F.3d at 1073. There, the plaintiffs

---

[4] Air Sampling and Analysis Plan available at: https://www.epa.gov/system/files/documents/2023-06/Air%20Sampling%20and%20Analysis%20Plan%20SAP_v2.1_20230419-508.pdf    (last accessed June 19, 2023.)

[5] Soil Sampling Plan, attached hereto as Ex. C, is also available at:
https://www.epa.gov/system/files/documents/2023-06/04%2005%23%202023%20Residential-Commercial-Agricultural%20Soil%20Sampling%20Work%20Plan%20508.pdf (accessed June 19, 2023.)

alleged that EPA's "inadequate cleanup plan" had "expose[d] plaintiffs to hazardous substances" and sought an injunction compelling EPA to "adopt[] and implement[] . . . stricter standards." *Id*. at 1070. However, the Court held that § 9613(h) foreclosed the claim. *Id*. at 1074. Because the plaintiffs sought to "modify or replace the remedial plan" with the imposition of new standards, the request "clearly" qualified as "a challenge to the selected remedial plan." *Id*. at 1073. Here, Plaintiffs' request to impose "industry standard" testing, Compl. ¶82, is no different than the request to "adopt[] and implement[] . . . stricter standards" in *Broward Gardens Tenants Association*. *Id*. at 1070. By seeking to "modify or replace" the removal plan for East Palestine with alternative testing, Plaintiffs also "clearly" bring a proscribed challenge to the removal plan within the meaning of § 9613(h). *Id*. at 1073; *see Giovanni*, 906 F.3d at 113 (finding no jurisdiction to require a "government-led health study" that involved testing for contaminants because "it would modify or replace the existing remedial plan").

*McClellan* underscores that cleanup plan interference, as is the case here, is the focus of the jurisdictional analysis. In *McClellan*, the Ninth Circuit made clear that the merit of plaintiff's allegations of deficient groundwater cleanup were "not dispositive of [the plaintiff's] claim." 47 F.3d at 331. Rather, the court's finding of no jurisdiction rested solely on its "inability to fashion any remedy that would not interfere with [the government's] CERCLA groundwater extraction system." *Id*. So too here. The merit of Plaintiffs' "flawed" testing claim and the alleged underlying scientific basis have no bearing on the jurisdictional analysis. (Compl., ECF No. 1, ¶60, PageID # 10.) The Court lacks jurisdiction over Plaintiffs' challenge due to its "inability to fashion any remedy that would not interfere" with the testing procedures set forth in the East Palestine removal plan. *McClellan*, 47 F.3d at 331; *see also Gen. Elec. Co.*, 467 F.3d at 1249 (rejecting plaintiff's "expert-intense argument that the remedial phase of the cleanup does not address the entirety of the contamination" because plaintiff's proposed remedy interfered with the remedial plan.).

Here, Plaintiffs' allegations and prayer for relief make clear that Plaintiffs seek to interfere with U.S. EPA's CERCLA removal action. For example, the Air Plan requires "free-roaming handheld real-time air monitoring," as well as other types of air monitoring and sampling. (Air Plan," Ex. B at 37); *see* 42 U.S.C. § 9601(23) (defining removal as "such actions as may be necessary to *monitor*" the release of contaminants) (emphasis added). Plaintiffs allege that "real time air monitoring" is inadequate and seek an order requiring U.S. EPA to conduct "industry standard occupational contaminant testing" that, according to Plaintiffs, is a different air monitoring test. (Compl., ECF No. 1, PageID # 14). Such overt interference "necessarily preempts the federal government's 'ability to choose'" an appropriate response, and is therefore, barred. *See Giovanni*, 906 F.3d at 115 (quoting *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 881 (D.C. Cir. 2014)) (interference "necessarily preempts the federal government's 'ability to choose the best remedial action among a panoply of remedial alternatives that have been analyzed in a completed remedial investigation and feasibility study according to criteria articulated in CERCLA[.]'"). *Id.* U.S. EPA's chosen testing methods for the East Palestine cleanup are part of an enormous coordination of expertise and resources that Congress intended to proceed unimpeded. Because Plaintiffs' lawsuit seeks to interfere with this effort, section 9613(h) bars this action.

## IV.    Plaintiffs Cannot Allege a Constitutional Violation Against a Federal Agency or Officer in His Official Capacity.

Assuming Plaintiffs state a plausible claim for deprivation of their constitutional rights, such a claim must be asserted against an individual federal official in their individual capacity. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("With respect to the alleged constitutional deprivation, his only remedy lies against the individual…."). Indeed, courts lack jurisdiction to hear claims of constitutional deprivations against the federal government, federal agencies, or federal officials in their official capacity. *See id.*; *Iqbal*, 556 U.S. at 676 ("Because vicarious

liability is inapplicable to *Bivens*[6] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself. We therefore hold that Meyer had no *Bivens* cause of action for damages against FSLIC.") Because Plaintiffs only name Administrator Regan in his official capacity and the U.S. EPA as a whole, they fail to state a claim.

## CONCLUSION

For the reasons articulated above, Plaintiffs have not met their burden of demonstrating that the Court has subject matter jurisdiction over their Complaint, nor have they stated a claim upon which relief can be granted. Thus, this Court should dismiss the Complaint.

---

[6] In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court created a private cause of action against federal officials for alleged constitutional violations, as federal actors generally are not subject to suit under 42 U.S.C. § 1983. Including *Bivens*, "[t]he Supreme Court has explicitly recognized only three contexts in which a private right of action for damages may be properly brought against federal officials for constitutional violations," *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *2 (6th Cir. Aug. 31, 2022), none of which are present in this case. As a result, even if Plaintiffs had brought a *Bivens* claim in this novel circumstance, it too would fail. *See Silva v. United States*, 45 F.4th 1134, 1142 (10th Cir. 2022) (Creating new *Bivens* remedies is a "'disfavored judicial activity' . . . impermissible in virtually all circumstances.") (quoting *Egbert v. Boule*, 142 S. Ct. 1793, 1803, 1807 (2022)).

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By: *s/Ruchi V. Asher*
   Ruchi V. Asher (#0090917)
   Assistant United States Attorney
   United States Court House
   801 West Superior Ave., Suite 400
   Cleveland, Ohio 44113
   Telephone: (216) 622-3718
   Facsimile: (216) 522-4982
   Ruchi.Asher@usdoj.gov

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ (D.C. Bar No. 995057)
Trial Attorney
Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

*Counsel for Federal Defendants*

<u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel states that the foregoing *Federal Defendants' Memorandum in Support of the Motion to Dismiss* is fourteen (14) pages in length and is in compliance with Loc. R. 7.1 for an unassigned case.

                                  *s/Ruchi V. Asher*
                                  Ruchi V. Asher