# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WE THE PATRIOTS USA, INC., et al., | ) | CASE NO. 4:23-cv-00382 |
| | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs We the Patriots USA, Inc. and Courtney Fish, represented by counsel, filed a complaint for declaratory and injunctive relief or, in the alternative, for a writ of mandamus against federal and Ohio officials for allegedly failing to take adequate steps to protect the public from the consequences of the toxic chemical spill that occurred in East Palestine, Ohio on February 3, 2023. (R. 1 at ¶1). Multiple other parties have filed class actions consolidated before a sister court.

Here, Plaintiffs' sole cause of action alleges a state-created danger in violation of the Fourteenth Amendment of the United States' Constitution. (R. 1 at ¶¶73-82). Defendants the United States Environmental Protection Agency and Michael Stanley Regan, Administrator of the U.S. EPA, filed a motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for an order

dismissing Plaintiffs' Complaint. (R. 19) Plaintiffs oppose said motion (R. 21) and Defendants have filed a reply in support of their motion. (R. 24).

The remaining Defendants[1] also moved to dismiss Plaintiff's Complaint for failure to state a claim. (R. 14). This latter motion is not addressed herein but rather by separate order.

## I. Factual Allegations

On February 3, 2023, a Norfolk Southern freight train derailed in East Palestine, Ohio. (Complaint, R. 1, PageID # 3, ¶11). The train included 20 cars containing toxic materials such as chloroethene, butyl acrylate, 2-ethyhexyl acrylate, ethylene glycol monobutyl ether, isobutylene, and benzene residue. (*Id*. at ¶10). The derailment caused some of the cars carrying the toxic materials to catch fire and burn for three days, as well as spilling chemicals into local waterways. (*Id.* at ¶¶ 11-13).

The United States EPA and Ohio EPA indicated on February 4, 2023, that they would respond to the derailment, and began air monitoring for volatile organic compounds (VOCs), including vinyl chloride and butyl acrylate. (R. 1, PageID # 7, ¶¶ 37-38). It is further alleged that both the federal and state EPAs used contractors to install various devices such as booms and underflow dams to restrict the flow of contaminated water. (*Id*. at ¶ 39). "Officials issued a shelter-in-place order for the entire town of East Palestine, affecting roughly 5,000 people, and an evacuation order was put in effect within a mile of the train derailment at 1020 East Taggart Street as of early Saturday, February 4, 2023." (R. 1, PageID #4, ¶16).

"On February 5, 2023, Defendant DeWine activated the Ohio National Guard to assist

---

[1] The remaining Defendants are Ohio Governor Mike DeWine and Anne M. Vogel, Director of Ohio's Environmental Protection Agency. (R. 1 at ¶¶6-7). They have been sued in their official capacities only. *Id*.

East Palestine authorities. Officials then issued a shelter-in-place order for the entire town of East Palestine and an evacuation order for people living within a mile radius of the train crash because of the risk of an explosion." (R. 1, PageID# 7, ¶40). "At this juncture, the EPAs reported that their community air monitoring readings did not detect any contaminants of concern. They also reported that the East Palestine water treatment plant confirmed that its water was not contaminated." (*Id*. at ¶41).

The Complaint avers that on the afternoon of February 6, 2023, emergency crews began a controlled burn of several cars, in a process known as a controlled release, resulting in "a large plume of thick black smoke in the form of a mushroom cloud" that released toxic chemicals into the atmosphere, soil, and nearby water sources. (R. 1, PageID# 4-5, ¶¶18-23).

On February 7, 2023, the federal and state EPAs informed the public that while they might smell chemical odors, they should not be concerned as the released chemicals had low odor thresholds. "In other words, a person could smell them before they posed a serious health risk." (R. 1, PageID# 8, ¶43). It is Plaintiff's position that this statement was "blatantly inaccurate" and designed to alleviate public and political pressure. (*Id*. at ¶44). It is also Plaintiff's position that "[b]oth EPAs testing of water and air around East Palestine was, and continue to be, seriously flawed." (*Id*. at ¶56). Specifically, the Complaint asserts that the EPAs tested only water surfaces "despite knowing that the most accurate data and the most critical contaminants are found in sediment because residual hydrocarbons settle there." (*Id*. at ¶60). It is further alleged that the EPAs "refused to deploy the most reliable testing possible…." (Id. at ¶ 59).

On February 21, 2023, the U.S. EPA, through a delegation of authority from the President of the United States under the Comprehensive Environmental Response Compensation,

and Liability Act (CERCLA), issued a "Unilateral Administrative Order for Removal Actions" (hereafter "Removal Order") in response to the East Palestine derailment. (R. 19-2, PageID# 187-263; Exh. A).

The Removal Order "pertains to property located at the Rail Line east northeast of the intersection of East Taggart Street and North Pleasant Drive (Latitude: 40.8360395; Longitude: 80.5222838) in East Palestine, Ohio (the "East Palestine Train Derailment Site") …. In addition to the response actions that are currently occurring, this Order requires Respondent to conduct removal actions described herein to abate an imminent and substantial endangerment to the public health or welfare or the environment that may be presented by the actual or threatened release of hazardous substances at or from the Site." (R. 19-2, PageID# 189, ¶2). The Removal Order included a number of concerns such as "actual or potential contamination of drinking water supplies or sensitive ecosystems" and "high levels of hazardous substances and pollutants or contaminants in soils largely at or near the surface, that may migrate." (R. 19-2, PageID# 198, ¶25(g)(2) & (g)(4)). The Removal Order requires Respondent to develop and implement "an air monitoring and sampling plan" and "a plan for the identification and delineation of the extent of contamination for: (1) Surface and subsurface soils; (2) Surface waters and sediments; (3) Groundwater; [and] (4) Drinking water sources[.]" (R. 19-2, PageID# 202, ¶36(c) & (d)). The EPA may "approve, disapprove, require revisions to, or modify the draft Removal Work Plan in whole or in part." (*Id*. at PageID# 203, ¶38(b)).

The Complaint seeks "[a] declaratory judgment finding that the Defendants have engaged in conduct that is a state-created danger to the Plaintiffs and all similarly situated residents of East Palestine, Ohio and the surrounding communities." (R. 1, PageID# 14). Plaintiffs also seek a writ of mandamus ordering Defendants to conduct alternative contaminant testing, as well

as seeking an injunction "barring the Defendants from providing the residents of East Palestine, Ohio and the surrounding areas with false assurances that the air and water quality in their communities is safe until such time as it is shown to be safe by industry standard occupational contaminant testing." (*Id*.) Defendants contend that Plaintiffs effectively seek to alter the Federal Defendants' removal plan under CERCLA and disrupt its execution. (R. 19-1, PageID# 175).

## II. Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) Standards

When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court must accept as true all the factual allegations contained in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *accord Streater v. Cox*, 336 Fed. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.] Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Federal courts are courts of "limited jurisdiction," and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction … and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id*.

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *accord Beiersdorfer v. LaRose*, No. 20-3557, 2021 WL 3702211, at *5 (6th Cir. Aug. 20, 2021). Where a defendant mounts a facial attack that "questions merely the sufficiency of the pleading," a district court must accept all allegations as true, but "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (quotation marks and internal citations omitted).

"A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie*, 15 F.3d at 598. "When examining a factual attack under Rule 12(b)(1), 'the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Glob.*

6

*Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citation omitted).

### III. Analysis

**A. Subject Matter Jurisdiction**

In their motion to dismiss Defendants assert that the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9613(h), deprives this Court of subject-matter jurisdiction over the Complaint. Therefore, Defendants argue, dismissal is warranted under Fed. R. Civ. P. 12(b)(1).[2] (R. 19-1, PageID# 172).

Pursuant to the express language of 42 U.S.C. § 9613(h), "[n]o Federal court shall have jurisdiction under Federal law … to review *any challenges* to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title[.]" (emphasis added). This provision was added to CERCLA by Congress in 1986 to "specifically preclude[] federal jurisdiction over pre-enforcement remedial action." *S. Pines Assocs. by Goldmeier v. United States*, 912 F.2d 713, 716 (4th Cir. 1990) (explaining that the structure of CERCLA and other "environmental statutes indicates that Congress intended to allow EPA to act to address environmental problems quickly and without becoming immediately entangled in litigation.") Courts have described § 9613(h) of CERCLA as a "blunt withdrawal of federal jurisdiction." *Giovanni v. United States Dep't of Navy*, 906 F.3d 94, 103 (3d Cir. 2018) (*quoting McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 328 (9th Cir. 1995) ("contemporaneous challenges to CERCLA cleanups" are precluded)); *Reardon v. United States*,

---

[2] Defendants also asserted that Plaintiffs cannot identify an applicable waiver of sovereign immunity, but that even if they did, CERCLA deprives federal courts of jurisdiction over challenges to EPA's removal or remedial actions. (R. 19-1, PageID# 179).

947 F.2d 1509, 1513 (1st Cir. 1991) ("Congress was no doubt concerned, first and foremost, that clean-up of substances that endanger public health would be delayed if EPA were forced to litigate each detail of its removal and remedial plans before implementing them."); *see also S. Ohio Coal Co. v. Off. of Surface Min., Reclamation & Enf't, Dep't of Interior*, 20 F.3d 1418, 1426 (6th Cir. 1994) (holding that judicial review of pre-enforcement action is not available under CERCLA); *Schalk v. Reilly*, 900 F.2d 1091, 1095 (7th Cir. 1990) ("The obvious meaning of this statute is that when a remedy has been selected, no challenge to the cleanup may occur prior to completion of the remedy.")

Furthermore, according to the United States Supreme Court, the word "any" has an expansive meaning. *United States v. Gonzales*, 520 U.S. 1 (1997). Congress' "use of the word 'any' compels us to conclude that Congress meant to bar jurisdiction over constitutional as well as statutory claims challenging the adequacy of a remedial plan." *Broward Gardens Tenants Ass'n v. U.S. E.P.A.*, 311 F.3d 1066, 1075 (11th Cir. 2002) (*citing Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 292-94 (6th Cir. 1991) (concluding that § 9613(h) applies to constitutional claims as well)). A lawsuit constitutes a "challenge" to a "remedial action … if it interferes with the implementation of a CERCLA remedy." *Broward Gardens Tenants Ass'n*, 311 F.3d at 1072 (*citing Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675 (8th Cir. 1998)); *accord Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 135 (2d Cir. 2023) ("The term 'remove' is broadly defined 'to include not only the cleanup and removal of [waste], but also the undertaking of studies, investigations, testing, and *other information gathering activities*" … [a]nd a suit constitutes a 'challenge' to EPA activity … if it so much as 'interferes with the implementation of a CERCLA remedy.'") (emphasis added) (citations omitted); *see also Giovanni*, 906 F.3d at 112 ("If a plaintiff demands that a defendant engage in activities that could

have been a part of the cleanup plan, then it is a challenge to the selected response actions.").

According to the very terms of the statute, "[t]he terms 'remove' or 'removal' means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, **such actions as may be necessary to monitor**, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release." 42 U.S.C. § 9601(23) (emphasis added). Further, "remedy or "remedial action" includes "any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment." 42 U.S.C. § 9601(24).

Defendants assert that the Complaint's "[e]fforts to force the government to adopt specific testing methods, as here, fall squarely within actions proscribed by 42 U.S.C. § 9613(h)." (R. 19-1, PageID# 181). By the very terms of the Complaint, Defendants argue, Plaintiffs seek to "prevent the government from using allegedly 'flawed' contaminant testing methods as part of the removal action, and instead force U.S. EPA to adopt methods that Plaintiffs deem 'industry standard.'" (R. 19-1, PageID# 182, *citing* R. 1, PageID# 10, 14; ¶¶56, 82). The Court agrees that such challenges, especially Plaintiffs' thinly veiled attempt to impose alternative testing methodologies on EPA's removal plan, are precluded by § 9613(h).

Plaintiffs' brief in opposition concedes that CERCLA divests federal courts of jurisdiction over challenges to removal or remedial action conducted by the United States through the EPA, and Plaintiffs do not dispute "as a general matter that Congress's intent in such a rule was to provide for the quick and effective response to manmade environmental disasters."

(R. 21, PageID# 534). Nevertheless, it is Plaintiffs' position that Defendants' conduct "falls well outside the scope of CERCLA" *Id*. Specifically, Plaintiffs maintain that the relevant statutes do not encompass communications with the public regarding the safety of an environment. (R. 21, PageID# 535). Plaintiffs deny that they are complaining about remedial and removal actions being inadequate,[3] but rather maintain that "the government is knowingly, intentionally, and willfully misleading them about the safety of their homes in such a manner as to induce them to expose themselves to harm that they otherwise would not do so." *Id*. at PageID# 536.

Although Plaintiffs' brief asserts that the Complaint is not barred by CERCLA, the allegations set forth therein unambiguously challenge the actions undertaken by the EPA and the removal and remedial plans implemented. (R. 1, ¶¶56-60, 62-63, 66-67). Furthermore, the Plaintiffs' prayer for relief expressly asks for "a writ of mandamus ordering the Defendants to conduct industry standard occupational contaminant testing." (R. 1, PageID# 14, ¶B). Such relief would directly interfere with the implementation of Defendants' chosen CERCLA remedy. Plaintiffs further ask for injunctive relief that would effectively restrain the EPA by barring the Defendants from providing statements or updates concerning "air and water quality in their communities" unless Defendants abandon the contaminant testing they are employing and instead adopt "industry standard occupational contaminant testing." *Id*. at ¶C.[4] Despite

---

[3] The Court is unconvinced, the Complaint is replete with allegations that the testing and monitoring is allegedly deficient or inadequate (R. 1, ¶¶56-60, 62-63, 66-67) and, for this reason, Plaintiffs seek to essentially silence Defendants from making any public statements about the efficacy of the removal and remedial actions taken unless they undertake monitoring methods done in accordance with the standards advocated for by Plaintiffs. (R. 1, PageID# 14).

[4] "Generally, requests for injunctive relief that relate in any way to pending response actions are viewed as challenges … [and] [i]f a plaintiff demands that a defendant engage in activities that could have been a part of the cleanup plan, then it is a challenge to the selected response actions." *Giovanni*, 906 F.3d at 111-112.

10

Plaintiffs' attempt to artfully craft the Complaint, it remains apparent on the face of the Complaint that Plaintiffs are attempting to alter (*i.e.* challenge) the removal and/or remedial action selected by Defendants under § 9604 — the exact type of challenge CERCLA prohibits and for which this Court has no jurisdiction. Moreover, Plaintiffs cite no authority for their novel and unconvincing theory—that a plaintiff, who seeks to silence the EPA by judicial order unless it alters its chosen removal/remedial action(s) to comply with Plaintiffs' demand, renders their claim as one outside of CERCLA's ambit of preclusion.

In addition, the Court agrees with Defendants that public communications are intertwined with the Removal Order, which contains a "Community Involvement Plan" stating as follows:

> EPA has the lead responsibility for implementing community involvement activities at the Site, including the preparation of a community involvement plan, in accordance with the NCP and EPA guidance. As requested by EPA, Respondents shall participate in community involvement activities, including participation in (a) the preparation of *information regarding the Work for dissemination to the public* (including compliance schedules and progress reports), with consideration given to the specific needs of the community, including translated materials and mass media and/or Internet notification and (b) *public meetings that may be held or sponsored by EPA to explain activities at or relating to the Site*.

(R. 19-2, PageID# 206, ¶42) (emphasis added). Moreover, the provisions of the Removal Order herein are consistent with federal regulations, which state that "[i]n the case of all CERCLA removal actions … a spokesperson shall be designated by the lead agency. The spokesperson *shall inform the community of actions taken*, respond to inquiries, and provide information concerning the release. All news releases or statements made by participating agencies shall be coordinated with the OSC/RPM. The spokesperson *shall notify, at a minimum, immediately affected citizens, state and local officials*, and, when appropriate, civil defense or emergency management agencies." 40 C.F.R. § 300.415(n) (emphasis added). Thus, the Court agrees with

11

Defendants that communications with the public are a necessary component of CERCLA. The relief sought by Plaintiffs—the effective silencing of the EPA—would unavoidably interfere with the removal/remedial action. It is also clear from the express language of the Complaint that the primary purpose of obtaining the "injunction barring the Defendants from providing the residents of East Palestine, Ohio and the surrounding areas with false assurances" is to modify or replace the remedial plan, as Plaintiffs only seek the injunction until such time as Defendants adopt the "industry-standard occupational contaminant testing" that they advocate for. (R. 1, PageID# 14, ¶C).

Herein, Plaintiffs' attempts to compel Defendants to adopt "industry standard" testing or else be silenced are tantamount to a request to "adopt[] and implement[] . . . stricter standards" that were found unactionable in *Broward Gardens Tenants Association*. 311 F.3d at 1070; *see also Giovanni*, 906 F.3d at 113 (finding "requests for a government-led health assessment or health effects study" was barred by CERCLA as "challenges to ongoing response actions"). Defendants' chosen testing methods, as well as their regulation-mandated communications to the public regarding said efforts, are part and parcel of the removal/remedial response, and it was Congress's express intent to allow such efforts to go forward unimpeded by federal lawsuits. Therefore, § 9613(h) deprives this Court of jurisdiction and necessitates a dismissal of this action.

**B. Immunity and the Administrative Procedures Act (APA), 5 U.S.C. § 702**

In their brief in opposition, Plaintiffs conceded that they have the burden to identify a waiver of sovereign immunity in order to proceed with a claim against the United States. (R. 21, PageID# 533, *citing Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000)). In addition to the above rejected argument that Plaintiffs' claims fall outside of CERCLA, Plaintiffs argue that

Defendants' sovereign immunity argument fails "because the United States has waived its sovereign immunity as to official agency action in the Administrative Procedure Act (5 U.S.C. § 702)." *Id*.

This argument is not well taken. First, in pertinent part, the APA states that "[n]othing herein … affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702. Therefore, the limitation on judicial review expressly contained in CERCLA is unaffected by § 702, and CERCLA's limitation on judicial review remains binding on this Court. The same statute also states that "[n]othing herein … confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id*. Therefore, while Defendants concede that CERCLA expressly grants consent to suit under certain limited circumstances (R. 24, PageID# 552), CERCLA expressly forbids jurisdiction over challenges to removal or remedial actions as discussed *supra*. *See also Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1013-14 (3d Cir. 1991) ("while the [APA] … establishes a presumptive right to judicial review, these normal means of review are not available when CERCLA is involved"); *Cannon v. Gates*, 538 F.3d 1328 (10th Cir. 2008) (dismissing plaintiffs' APA and Solid Waste Disposal Act claims based on CERCLA's jurisdictional bar); *Cooper Indus., Inc. v. U.S. E.P.A.*, 775 F. Supp. 1027, 1040 (W.D. Mich. 1991) (concluding that "due to the express language of section 9613(h) and the objectives intended by Congress, CERCLA precludes federal court jurisdiction [and] … review of [plaintiff's] claim is not available under the APA.").

The Court agrees, reading 5 U.S.C. § 702 and 42 U.S.C. § 9613(h) together makes clear that the APA's general waiver of sovereign immunity does not override CERCLA's blunt withdrawal of federal jurisdiction where an action challenges a removal or remedial action of the

EPA.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (R. 19) is hereby GRANTED and the case DISMISSED.

IT IS SO ORDERED.

                                                  s/ *David A. Ruiz*
                                                  David A. Ruiz
                                                  United States District Judge

Date: September 25, 2024